# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

ANGELA KENDALL,

*Plaintiff/Appellant,*

vs.

ZOLTEK CORPORATION,

*Defendant/Appellee.*

**Appeal from the United States District Court
for the Eastern District of Missouri (St. Louis)
Case No. 4:22-cv-01119-JAR
The Honorable John A. Ross, United States District Judge**

**BRIEF OF APPELLEE ZOLTEK CORPORATION**

Thomas E. Berry, Jr.
MaryAnne Quill
JACKSON LEWIS P.C.
1 N. Brentwood Blvd., Suite 1150
St. Louis, Missouri 63105
Telephone: (314) 827-3939
Facsimile: (314) 827-3940
tom.berry@jacksonlewis.com
maryanne.quill@jacksonlewis.com

*ATTORNEYS FOR APPELLEE*

## <u>SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT</u>

Appellant Angela Kendall ("Kendall") is a former Production Operator of Appellee Zoltek Corporation. ("Zoltek"). In the summer of 2021, Kendall began requesting increasingly prohibitive work restrictions. Although Zoltek temporarily accommodated Kendall by allowing her to sit "secondarily," her doctor continued to increase her restrictions, ultimately preventing her from performing the essential functions of the position. (Jt. App., Vol. I, 047-048, 050 R. Doc. 48, at 4-5, 7.)[1] Eventually, Kendall's doctor noted these restrictions would be essentially permanent. (Jt. App., Vol. I, 050 R. Doc. 48, at 7.) Notwithstanding, Zoltek allowed Kendall to take FMLA leave to allow time for her condition to improve. (Jt. App., Vol. I, 051 R. Doc. 48, at 8.) However, after Kendall's FMLA leave ran out, she notified Zoltek that her condition had not improved sufficient to perform the essential functions of the position. Zoltek then, and only then, terminated Kendall's employment. (Jt. App., Vol. I, 053 R. Doc. 48, at 10.)

The District Court entered summary judgment against Kendall on her disability discrimination claim, finding that Kendall could not perform the essential functions of her position, and the proposed accommodations were unreasonable. Likewise, the District Court found that Kendall could not make a submissible case of sex discrimination, as denial of an unreasonable accommodation could not constitute a disadvantageous change to Kendall's work conditions.

Zoltek requests fifteen (15) minutes for oral argument on these issues.

---

[1] "Jt. App. ___," "App. Add. ____," "App. Br. ___," and "DFT App. ___" refer to page numbers in Joint Appendix, Appellant's Addendum, Appellant's Brief, and Appellee's Appendix, respectively.

i

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 and 8th Cir. R. 26.1A, counsel of record for Zoltek previously filed its Corporate Disclosure Statement, certifying that it is a privately held corporation. The parent company of Zoltek is Toray Industries, Inc. (ECF ID 5491695.)

Appellate Case: 25-1411    Page: 3    Date Filed: 10/03/2025 Entry ID: 5564286

# TABLE OF CONTENTS

**SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT**....... i

**CORPORATE DISCLOSURE STATEMENT**.......................................................... ii

**TABLE OF CONTENTS**........................................................................................ iii

**TABLE OF AUTHORITIES**................................................................................. iv

**JURISDICTIONAL STATEMENT**.......................................................................1

**SUMMARY OF THE ISSUES**...............................................................................2

**STATEMENT OF THE CASE**...............................................................................3

    I.    FACTUAL OVERVIEW...................................................................................3

    II. PROCEDURAL OVERVIEW...................................................................12

**SUMMARY OF THE ARGUMENT**...................................................................14

**STANDARD OF REVIEW**..................................................................................15

**ARGUMENT**........................................................................................................16

    I.    INADMISSIBLE EVIDENCE SHOULD NOT BE CONSIDERED.......16

    II.   THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON KENDALL'S ADA DISCRIMINATION CLAIMS.................................................................18

        A. Kendall is not a "qualified" individual under the ADA because she could not perform her job duties with or without reasonable accommodation.................................................................20

            1. Kendall could not perform the essential functions of her job..........21

            2. The accommodations requested by kendall were unreasonable......30

    III. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON KENDALL'S TITLE VII CLAIM ........36

**CONCLUSION**.....................................................................................................39

**CERTIFICATE OF COMPLIANCE**..................................................................40

**CERTIFICATE OF SERVICE**...........................................................................41

Appellate Case: 25-1411    Page: 4    Date Filed: 10/03/2025 Entry ID: 5564286

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooks v. Tri-Systems, Inc.*,
425 F.3d 1109 (8th Cir. 2005)...........................................................................18

*Denson v. Steak 'n Shake, Inc.*,
910 F.3d 368, 371 (8th Cir. 2018)........................................................................2

*Dropinski v. Douglas Cty.*,
298 F.3d 704 (8th Cir. 2002)..........................................................................2, 33

*Faidley v. United Parcel Serv. of Am., Inc.*,
889 F.3d 933 (8th Cir. 2018)...........................................................................34

*Faulkner v. Douglas County, Nebraska*,
906 F.3d 728.................................................................................................30, 38

*Fjellestad v. Pizza Hut of America, Inc.*,
188 F.3d 944 (8th Cir. 1999)...........................................................................33

*Goosen v. Minn. DOT*,
105 F.4th 1034 (8th Cir. 2024)................................................................2, 16, 18

*Kratzer v. Rockwell Collins, Inc.*,
398 F.3d 1040 (8th Cir. 2005)........................................................................2, 38

*Mack v. Haarman & Reimer Corp.*,
1998 U.S. Dist. LEXIS 9316 (D. Minn. Mar. 26, 1998) ....................................33

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..........................................................................................37

*Moritz v. Frontier Airlines, Inc.*,
147 F.3d 784 (8th Cir. 1998)........................................................................22, 33

*Moses v. Dassault Falcon Jet - Wilmington Corp*,
894 F.3d 911 (8th Cir. 2018)...............................................................2, 21, 36

*Owens v. N. Tier Retail LLC*,
2021 U.S. Dist. LEXIS 55807 (D. Minn. Mar. 24, 2021) ...............................32

Appellate Case: 25-1411    Page: 5    Date Filed: 10/03/2025 Entry ID: 5564286

*Peebles v. Potter*,
354 F.3d 761 (8th Cir. 2004)................................................................31

*Rehrs v. Iams Co.*,
486 F.3d 353 (8th Cir. 2007)................................................................30

*Scruggs v. Pulaski Cnty.*,
817 F.3d 1087 (8th Cir. 2016)........................................................16, 23

*Skerski v. Time Warner Cable Co.*,
257 F.3d 273 (3rd Cir. 2001)................................................................22

*Tenge v. Phillips Mod. Ag Co.*,
446 F.3d 903 (8th Cir. 2006)...........................................................37, 38

*US Airways, Inc. v. Barnett*,
535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) .................................31

**Statutes**

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. §§ 1331 ...............................................................................1

42 U.S.C. § 12102(1)(A).......................................................................21

42 U.S.C. § 12111(8) ..........................................................................19

**Other Authorities**

29 C.F.R. § 1630.2(n)(1) (2018) ...........................................................22

Federal Rule of Civil Procedure 56 ...................................................1, 16

Federal Rules of Civil Procedure Rule 26(a)......................................18, 19

v

# JURISDICTIONAL STATEMENT

Kendall commenced this action in the United States District Court for the Eastern District of Missouri asserting claims against Zoltek pursuant to the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). (Jt. App., Vol. I, 001-009 R. Doc. 1.) Thus, the District Court had jurisdiction of the case pursuant to 28 U.S.C. §§ 1331.

On April 29, 2024, Zoltek moved for Summary Judgment under Federal Rule of Civil Procedure 56 seeking judgment in its favor and dismissal of Kendall's Complaint because no genuine issue of material fact existed and Zoltek was entitled to judgment as a matter of law. (Jt. App., Vol. I, 019-024 R. Doc. 46.) On January 27, 2025, the District Court granted Zoltek's motion in its entirety and judgment was entered in Zoltek's favor. (Jt. App., Vol. II, 395-408, R. Docs. 69-70; App. Add., at 14, R. Doc 69, at 13.)

On February 27, 2025, Kendall filed a notice of appeal. (Jt. App., Vol. II, 409 R. Doc. 73.) Kendall's appeal is from a final order and judgment disposing of all of her claims.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

1

# SUMMARY OF THE ISSUES

I. **The district court did not err in granting summary judgment on Kendall's failure to accommodate claim under the Americans with Disabilities Act (ADA) by finding that she was not a "qualified individual" with a disability under the law because she could not perform the essential duties of the job, as Kendall did not present evidence that she could perform the essential functions of her job with reasonable accommodations. Moreover, there is no "direct evidence" of discrimination.**

*Denson v. Steak 'n Shake, Inc.*, 910 F.3d 368, 371 (8th Cir. 2018)

*Dropinski v. Douglas Cty.*, 298 F.3d 704, 710 (8th Cir. 2002)

*Goosen v. Minn. DOT*, 105 F.4th 1034, 1043 (8th Cir. 2024)

*Moses v. Dassault Falcon Jet - Wilmington Corp*, 894 F.3d 911, 924 (8th Cir. 2018)

II. **The district court did not err in granting summary judgment on Kendall's sex discrimination claim under Title VII, as Kendall was not qualified for her position, because there was no adverse action, and because there is no evidence that a similarly situated male employee was permitted the same accommodations provided to Kendall.**

*Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046 (8th Cir. 2005)

2

Appellate Case: 25-1411    Page: 8    Date Filed: 10/03/2025 Entry ID: 5564286

**STATEMENT OF THE CASE**

## I.    FACTUAL OVERVIEW

Zoltek produces essential products based on the definition designated by the Cybersecurity and Infrastructure Security Agency, a division of the US Department of Homeland Security. (Jt. App., Vol. I, 044 R. Doc. 48, at 1; Jt. App., Vol. I, 058-059 R. Doc. 48-1.) Zoltek's St. Peters facility supplies global products to wind turbine generators for renewable energy. (Jt. App., Vol. I, 044 R. Doc. 48, at 1; Jt. App., Vol. I, 058-059 R. Doc. 48-1.)

Kendall was hired as a Production Operator for Zoltek in December 2018 in its St. Peters facility. (Jt. App., Vol. I, 045 R. Doc. 48, at 2; Jt. App., Vol. I, 083-084 R. Doc. 48-2, at 50-51.) As a Production Operator, Kendall's essential duties and responsibilities included setting up and operating equipment to process carbon fiber for composite products; mixing resin and polymer; feeding batch carbon fiber into a machine; inspecting goods during production and finished goods before shipment; restocking material; packaging, labeling, documentation of products; and keeping the equipment area safe, clean, and organized. (Jt. App., Vol. I, 045-046 R. Doc. 48, at 2-3; Jt. App., Vol. I, 058-059 R. Doc. 48-1.)

Part of these duties included having to clean out carbon fiber and removing other foreign objects from the carbon fiber machinery during the carbon fiber bath process; which included reaching to cut knots out of the carbon fiber; reaching above

3

shoulders and bending and squatting below knee level down to handle rolls of peel ply; and changing peel plies weighing up to twenty pounds. (Jt. App., Vol. I, 046 R. Doc. 48, at 3; Jt. App., Vol. I, 067-071 R. Doc. 48-2, at 23-27.)

The Production Operator job is physically demanding. The physical requirements of the Production Operator position require each Production Operator to be able to lift $25^+$ pounds overhead; be able to stand for extended periods of time (up to twelve hours); be able to lift, turn, bend, reach, pull, and walk; be able to wear a respirator; and be able to read, write, and understand English. (Jt. App., Vol. I, 046 R. Doc. 48, at 3; Jt. App., Vol. I, 058-059 R. Doc. 48-1; Jt. App., Vol. I, 066-067, 075, 083-086 R. Doc. 48-2, at 22-23, 32, 50-53.)

On April 27, 2021, Kendall was performing her usual job duties when she allegedly injured her back by slipping and falling during her shift. (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 184 R. Doc. 48-4; Jt. App., Vol. I, 089-090 R. Doc. 48-2, at 65-66.) On April 30, 2021, Kendall sought emergency care and was diagnosed with spasms and potential sciatica. (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 188 R. Doc. 48-5, at 1; Jt. App., Vol. I, 091-092 R. Doc. 48-2, at 72-73.) The next week, on May 7, 2021, she visited a Concentra doctor and was released back to work with no restrictions. (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 190 R. Doc. 48-6; Jt. App., Vol. I, 093-094 R. Doc. 48-2, at 79-80.)

Appellate Case: 25-1411     Page: 10     Date Filed: 10/03/2025 Entry ID: 5564286

However, six weeks later, in late June 2021, Kendall followed up with her primary physician, Dr. Doris Brown. (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 096 R. Doc. 48-7; Jt. App., Vol. I, 096 R. Doc. 48-2, at 87.) On June 23, 2021, Kendall received a doctor's note stating as follows: "Please allow Angela sitting time secondarily, during her work shifts due to her sciatica flare ups." (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 096 R. Doc. 48-7; Jt. App., Vol. I, 096 R. Doc. 48-2, at 87.) In compliance with this note, Kendall's supervisor, Harold Webster, and foreperson, Michelle Williams, allowed Kendall to sit during her shifts. (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 098, 116-117 R. Doc. 48-2, at 90, 112-113.) Zoltek temporarily accommodated Kendall's request to sit "secondarily" for nearly three months, but her condition did not improve. (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 099-100 R. Doc. 48-2, at 91-92.)

By mid-September 2021, a Zoltek human resources (HR) specialist, Dianna Young, asked Kendall to provide an updated prognosis from her doctor regarding her medical restrictions. (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 192 R. Doc. 48-8; Jt. App., Vol. I, 100 R. Doc. 48-2, at 92.) As such, on September 17, 2021, Kendall provided a note from Nurse Practitioner Elizabeth King stating as follows: "Patient may return to work with the following restrictions: Above patient cannot crawl up under something and get back up after to return to sitting down position as they would like her to. (pt. can sit down to work just not crawl.)" (Jt. App., Vol. I, 048

5

Appellate Case: 25-1411     Page: 11     Date Filed: 10/03/2025 Entry ID: 5564286

R. Doc. 48, at 5; Jt. App., Vol. I, 193 R. Doc. 48-9; Jt. App., Vol. I, 101-102 R. Doc. 48-2, at 93-94.) The ability to get down on her knees and crawl underneath the equipment at Zoltek was a task that Plaintiff and all other production operators had to perform on a daily basis as part of their regular duties. (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 102 R. Doc. 48-2, at 94.)

On or about October 2, 2021, Lauren Amsler, Zoltek's Human Resources representative, contacted Kendall to discuss a work-related report. (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 111 R. Doc. 48-2, at 107.) During the call, Kendall explained to Ms. Amsler that she was unable to replace parts on or work on specific machines due to her inability to crawl. (Jt. App., Vol. I, 049 R. Doc. 48, at 6; Jt. App., Vol. I, 109 R. Doc. 48-2, at 103.) According to Kendall, someone else would need to assist her replace the parts on those specific machines if she had been assigned to them. (Jt. App., Vol. I, 049 R. Doc. 48, at 6; Jt. App., Vol. I, 109 R. Doc. 48-2, at 103.)

On October 5, 2021, a meeting was convened among Kendall, Ms. Amsler, Ms. Young, supervisor Webster, and plant manager Dawn Pagano to discuss the status of Kendall's more restrictive work restrictions and potential accommodations. (Jt. App., Vol. I, 049-050 R. Doc. 48, at 6-7; Jt. App., Vol. I, 115-116, 170-171 R. Doc. 48-2, at 111-112, 175-176.) Kendall attended the meeting accompanied by her friend, Evelyn Baker, a retired judge. (Jt. App., Vol. I, 115-116, 170-171 R. Doc. 48-2, at 111-112, 175-176; Jt. App., Vol. I, 308-311 R. Doc. 58-3; Jt. App., Vol. II, 397 R. Doc. 69, at

6

Appellate Case: 25-1411     Page: 12     Date Filed: 10/03/2025 Entry ID: 5564286

3.) During the meeting, Ms. Amsler asked Kendall to provide an updated doctor's note clarifying the nature and duration of her restrictions. (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 121-122 R. Doc. 48-2, at 117-118; Jt. App., Vol. II, 397 R. Doc. 69, at 3.)

According to Ms. Baker, who provided an affidavit replete with hearsay in support of Kendall's position that she was denied accommodations, Zoltek's representatives explained that Kendall's job restrictions and performance were not the issue, but it would be "bad for morale" if they allowed her to sit. (Jt. App., Vol. I, 310 R. Doc. 58-3, at 3.) But according to Zoltek's contemporaneous notes from the meeting, Ms. Pagano had issued a "no sitting" reminder to employees in January 2021 and explained, "we have to enforce the policy." (Jt. App., Vol. II, 312-313 R. Doc. 58-4; Jt. App., Vol. II, 397 R. Doc. 69, at 3.) Kendall likewise confirmed in deposition that the "no sitting" rule was reiterated at pre-shift meetings. (Jt. App., Vol. I, 079 R. Doc. 48-2, at 39; Jt. App., Vol. II, 397 R. Doc. 69, at 3.) When Kendall asked why her accommodation was initially approved, Zoltek explained that at that point, "sitting was secondary" (referring to Dr. Brown's first note), "not primary" with no end date. (Jt. App., Vol. II, 312-313 R. Doc. 58-4; Jt. App., Vol. II, 397 R. Doc. 69, at 3.)

Kendall further believes that a male employee, Tyrone Brooks, was allowed to sit during his shifts. Yet Brooks testified under oath that he had knee surgery in 2018 and a meniscus tear in 2020, each time taking leave from work, but returning without

7

accommodations. (Jt. App., Vol. I, 056 R. Doc. 48, at 13; Jt. App., Vol. I, 236-235 R. Doc. 48-23.) Mr. Brooks further denied sitting for prolonged periods and stated that he was required to stand to perform his duties. (Jt. App., Vol. I, 056 R. Doc. 48, at 13; Jt. App., Vol. I, 236-235 R. Doc. 48-23.)

After the October 5, 2021 meeting, Kendall went on medical leave on or about October 5, 2021. (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 110 R. Doc. 48-2, at 106.)

On October 15, 2021, Kendall submitted an updated note from Dr. Brown stating as follows: "Angela needs to be able to sit down immediately after standing to change paper. She cannot crawl around on the floor. This is a permanent request starting today, October 14, 2021, thru October 14, 2022[sic], renewable letter to be issued yearly." (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 196 R. Doc. 48-11, at 2; Jt. App., Vol. I, 082, 121, 123, 148 R. Doc. 48-2, at 48, 117, 119, 148.)

On October 26, 2021, Kendall attended another meeting to discuss her accommodations, this time with Zoltek's global manager of HR, Nan Clark, and its vice president of global HR, Gregg Biggs. (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 127-128 R. Doc. 48-2, at 123-124.) They advised her to remain off work until her medical condition improved and encouraged Kendall to apply for FMLA leave and short-term disability benefits. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 128-130 R. Doc. 48-2, at 124, 127-128.)

Appellate Case: 25-1411    Page: 14    Date Filed: 10/03/2025 Entry ID: 5564286

In November 2021, Kendall applied for and received both FMLA and short-term disability ("STD") benefits. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 197-200 R. Doc. 48-12; Jt. App., Vol. I, 201-206 R. Doc. 48-13; Jt. App., Vol. I, 207-213 R. Doc. 48-14; Jt. App., Vol. I, 086-087, 130-137 R. Doc. 48-2, at 53-54, 128-135.) Nurse King completed the medical certification forms for both FMLA leave and STD benefits. (Jt. App., Vol. I, 051-52 R. Doc. 48, at 8-9; Jt. App., Vol. I, 197-200 R. Doc. 48-12; Jt. App., Vol. I, 207-213 R. Doc. 48-14; Jt. App., Vol. I, 138-140 R. Doc. 48-2, at 136, 138-139.)

Kendall's FMLA paperwork identified Kendall's condition as chronic back pain due to bilateral lumbar sciatica and lumbar herniation. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 199 R. Doc. 48-12, at 3; Jt. App., Vol. I, 132-134 R. Doc. 48-2, at 130-132.) The FMLA paperwork further noted that Kendall would be unable to work a reduced schedule, and would be incapacitated from working through at least January 20, 2022. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 199 R. Doc. 48-12, at 3; Jt. App., Vol. I, 133-134 R. Doc. 48-2, at 131-132.) The paperwork finally noted that Kendall could not bend, lift, stoop, kneel, or stand for prolonged periods of time, which are all tasks that she otherwise would perform on a daily basis. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 200 R. Doc. 48-12, at 4; Jt. App., Vol. I, 134-135 R. Doc. 48-2, at 132-133.)

9

The STD paperwork likewise confirmed Kendall's limitations. Specifically, the STD paperwork indicated that Kendall would not be able to perform her essential job functions, including stooping, kneeling, bending, squatting, reaching or crawling under machines, reaching above her shoulders, lifting over 10 pounds, or standing more than 10 minutes. (Jt. App., Vol. I, 052 R. Doc. 48, at 9; Jt. App., Vol. I, 212-213 R. Doc. 48-14, at 6-7; Jt. App., Vol. I, 140-142 R. Doc. 48-2, at 139-141.) The STD paperwork further described Kendall as "markedly limited" in performing repetitive or short-cycle work, and noted she was "unable to perform any work at a constant pace." (Jt. App., Vol. I, 052 R. Doc. 48, at 9; Jt. App., Vol. I, 213 R. Doc. 48-14, at 7; Jt. App., Vol. I, 143 R. Doc. 48-2, at 143.)

Kendall's FMLA leave ran concurrently with her leave of absence, beginning November 12, 2021. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 197-200 R. Doc. 48-12; Jt. App., Vol. I, 086-087, 130-135 R. Doc. 48-2, at 53-54, 128-133.) However, Kendall's FMLA leave expired on November 18 because she had used most of it earlier that year for a carpal tunnel surgery. (Jt. App., Vol. I, 053 R. Doc. 48, at 10; Jt. App., Vol. I, 214-215 R. Doc. 48-15; Jt. App., Vol. I, 088, 147, 149 R. Doc. 48-2, at 55, 147, 149.) During a phone call with Ms. Amsler while on leave, Kendall confirmed that the medical prognosis identified in her disability benefits application had not changed, and that she was not yet able to come back to work. (Jt. App., Vol. I,

10

Appellate Case: 25-1411     Page: 16     Date Filed: 10/03/2025 Entry ID: 5564286

053 R. Doc. 48, at 10; Jt. App., Vol. I, 214-215 R. Doc. 48-15; Jt. App., Vol. I, 145-147 R. Doc. 48-2, at 144-146.)

Zoltek formally terminated Kendall's employment in a letter dated January 7, 2022, recounting the foregoing events and circumstances, noting her ongoing and indefinite physical restrictions and exhaustion of FMLA leave, and citing the company's permanent staffing needs and impact on coworkers and customers. (Jt. App., Vol. I, 053 R. Doc. 48, at 10; Jt. App., Vol. I, 214-215 R. Doc. 48-15.) The letter further states that Kendall could be rehired if released from work restrictions and would be considered for any jobs available for her qualifications. (Jt. App., Vol. I, 054 R. Doc. 48, at 11; Jt. App., Vol. I, 214-215 R. Doc. 48-15.)

In connection with her workers' compensation claim relating to the alleged workplace injury in April 2021, Kendall obtained an independent medical examination by Dr. David Volarich in November 2022, whose findings further confirmed Kendall's restrictions. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 225-233 R. Doc. 48-21; Jt. App., Vol. I, 061-062 R. Doc. 48-2, at 17-18.) Dr. Volarich's written report dated November 22, 2022, specifically stated that Kendall should "avoid all bending, twisting, lifting, pushing, pulling carrying, climbing, and other similar tasks […] She should not handle weights greater than 10-12 pounds and limit this task to an occasional basis […] [and] She should avoid remaining in a fixed position for any more than 20-30 minutes at a time, including both sitting and

11

Appellate Case: 25-1411     Page: 17     Date Filed: 10/03/2025 Entry ID: 5564286

standing." (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 232 R. Doc. 48-21 at 7; Jt. App., Vol. I, 061-067, 070-072, 075-79 R. Doc. 48-2, at 17-23, 26-28, 32-33, 37-39.)

Kendall attempted to find work after her employment with Zoltek ended. However, she could not sustain employment. She left her first job due to problems with her back and did not work at all after September 2022 due to a back surgery that she received. (Jt. App., Vol. I, 054-055 R. Doc. 48, at 11-12; Jt. App., Vol. I, 224 R. Doc. 48-20; Jt. App., Vol. I, 151-152, 157-161 R. Doc. 48-2, at 153-154, 162-166.)

Because Kendall was unable to work, she applied for and received Social Security Disability payments, approved on October 25, 2023; retroactive to January 2023. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 234-235 R. Doc. 48-22; Jt. App., Vol. I, 161-167 R. Doc. 48-2, at 166-172.)

## II.     PROCEDURAL OVERVIEW

On October 24, 2022, Kendall filed a three-count complaint against Zoltek, alleging disability discrimination – failure to provide a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA") (Count I), discrimination based on sex in violation of Title VII (Count II), and retaliation in violation of the ADA (Count III). (Jt. App., Vol. I, 001-009 R. Doc. 1.)

On April 29, 2024, Zoltek moved for Summary Judgment. (Jt. App., Vol. I, 019-024 R. Doc. 46.) On January 27, 2025, the District Court granted Zoltek's Motion for

12

Summary Judgment in its entirety and judgment was entered in Zoltek's favor. (Jt. App., Vol. II, 395-408, R. Docs. 69-70; App. Add., at 14, R. Doc 69, at 13.)

The District Court granted Zoltek's Motion for Summary Judgment on Kendall's disability discrimination claim because Kendall was unable to perform the essential functions of the Production Operator position, and because the accommodations she sought were unreasonable, thereby preventing her from being a "qualified individual" with a disability under the ADA. (Jt. App., Vol. II, 403 R. Doc. 69, at 9; App. Add., at 10, R. Doc 69, at 9.) Likewise, the District Court granted Zoltek's Motion for Summary Judgment on Kendall's Title VII sex discrimination claim because Kendall could not perform the essential functions of her job with or without reasonable accommodations, thereby preventing her from making a *prima facie* claim. (Jt. App., Vol. II, 405 R. Doc. 69, at 11; App. Add., at 12, R. Doc 69, at 11.) Finally, the District Court granted Zoltek's Motion for Summary Judgment on Kendall's retaliation claim because there was no evidence of an adverse employment action. (Jt. App., Vol. II, 406 R. Doc. 69, at 12; App. Add., at 13, R. Doc 69, at 12.)

Kendall now appeals the District Court's decision in relation to her claims for ADA discrimination (Count I) and Title VII discrimination (Count II)[2]. Zoltek asks this Court to affirm the District Court's ruling, disposing of all claims.

---

[2] Appellant did not appeal entry of judgment in favor of Zoltek and dismissal of Appellant's ADA retaliation claim. As such, it is not addressed herein.

Appellate Case: 25-1411    Page: 19    Date Filed: 10/03/2025 Entry ID: 5564286

# SUMMARY OF THE ARGUMENT

The District Court did not err in granting summary judgment on Kendall's ADA discrimination and Title VII discrimination claims.

First, the record establishes that Kendall was medically unable to perform the essential functions of Production Operator, given increasing work restrictions imposed by her medical providers, which became permanent. Moreover, Kendall's requests for accommodation, either permanently eliminating her responsibility to perform a number of essential job functions of her position or requiring her coworkers to perform such functions for her, were unreasonable as a matter of law. Summary judgment on her ADA claim for failure to accommodate was appropriate, and the District Court's ruling should be affirmed.

Second, as Kendall admittedly could not perform the essential functions of her position, she could not perform the job to Zoltek's expectations as required for a claim of sex discrimination under Title VII. But, even if the Court accepts that Kendall's proposed comparator was similarly situated, Zoltek would still be entitled to summary judgment because Zoltek had a legitimate explanation for denying Kendall her requested accommodations. Moreover, the record is void of any admissible evidence of any similarly situated male comparator receiving more favorable treatment. Summary judgment on her Title VII claim was appropriate.

Accordingly, the District Court's ruling should be affirmed.

14

## STANDARD OF REVIEW

Review of the district court's grant of summary judgment by this Court is *de novo*, viewing the facts in the light most favorable to the nonmoving party. *Scruggs v. Pulaski Cnty.*, 817 F.3d 1087, 1092 (8th Cir. 2016). A district court's grant of summary judgment is proper when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Goosen v. Minn. DOT*, 105 F.4th 1034, 1039 (8th Cir. 2024).

Appellate Case: 25-1411    Page: 21    Date Filed: 10/03/2025 Entry ID: 5564286

**ARGUMENT**

Kendall's theory in support of reversing the District Court's rulings on her claims for disability discrimination – failure to accommodate and sex discrimination is based entirely on unsupported facts in the record and hearsay evidence which is irrelevant to the law and unsupported by the record. Therefore, this Court should affirm the District Court's ruling granting summary judgment.

## I.    INADMISSIBLE EVIDENCE SHOULD NOT BE CONSIDERED.

As an initial matter, Kendall's brief relies on various inadmissible statements that should not be considered.

First, Kendall relies upon an affidavit of her friend, Evelyn Baker. Ms. Baker is a former Missouri circuit court judge and attorney for the NLRB. (App. Br., at 12-13; Jt. App., Vol. I, 308-311 R. Doc. 58-3.) Kendall argues that given her legal background, Ms. Baker's testimony should be considered "highly credible" and "powerful" in defense of Kendall's arguments. Ms. Baker's legal background, however, does not cure the evidentiary defects contained within her affidavit.

Specifically, Ms. Baker produced an affidavit that asserts that "unnamed agents" of Zoltek stated at a meeting that it would be bad for morale if Kendall were allowed to sit, and that male employee Brooks was allowed to sit. (Jt. App., Vol. I, 310 R. Doc. 58-3, at 3.) These statements are hearsay within hearsay. No information is provided on the identity of the declarant that allegedly made the statements, therefore

16

it is not clear whether the statements can be binding on Zoltek as a result. Moreover, these statements are specifically contradicted by Mr. Brooks, as stated in his own affidavit.

Inadmissible hearsay evidence cannot be used to defeat summary judgment. *Brooks v. Tri-Systems, Inc*., 425 F.3d 1109, 1111 (8th Cir. 2005). Whether or not Ms. Baker is credible or distinguished in her past legal accomplishments does not provide an exemption to the hearsay rules. Ms. Baker's inability to identify the declarant of the alleged admission means that such evidence is hearsay within hearsay. Therefore, the statements from unknown declarants in her affidavit should not be considered for purposes of evaluating summary judgment.

Similarly, Kendall offers two other affidavits in support of her claims. One, from former employee Jamil Jackson, who was never disclosed in discovery; the other, from former employee Gerald Squalls, who was. (Jt. App., Vol. II, 314-316 R. Doc. 58-5; Jt. App., Vol. II, 317-318 R. Doc. 58-6; DFT App. 0001-0041.) Any statement supported by the affidavit of Jackson should not be considered because Jackson was never disclosed in Kendall's Initial and Amended Disclosures, or pursuant to any discovery request. (DFT App. 0001-0041.) At summary judgment, the parties are entitled to use evidence from sources previously disclosed pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. *See Goosen v. Minn. DOT*, 105 F.4th 1034 (8th Cir. 2024) (noting that where a party fails to disclose in a timely manner,

17

"Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the failure to comply with Rule 26(a.)" Kendall is not entitled to use such evidence now as it was not disclosed pursuant to the Rules.

## II. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON KENDALL'S ADA DISCRIMINATION CLAIMS.

The district court did not err in granting summary judgment on Kendall's failure to accommodate and termination claims under the Americans with Disabilities Act because Kendall is not a "qualified individual" with a disability under the law. To be a "qualified individual" Kendall must establish that she could "perform the essential functions of the employment position," either "with or without reasonable accommodation." *See* 42 U.S.C. § 12111(8). Not only did Kendall fail to establish that she could perform the essential functions of her job with Zoltek, Kendall repeatedly admitted that she could **not** perform the essential functions of her job, either with or without a reasonable accommodation.

Kendall, on the other hand, believes she has presented genuine and material evidence showing she could perform the essential functions of her position with reasonable accommodations and argues there is direct evidence of Zoltek's discriminatory intent. In making this argument, Kendall relies primarily on hearsay evidence to suggest she was not medically unable to perform her job duties. Of course, this argument completely ignores Kendall's repeated deposition admissions to the contrary.

18

First, Kendall believes that because plant manager Dawn Pagano allegedly stated in a meeting on or about October 6, 2021, that Kendall's performance was not an issue, this undermines any claim that Kendall could not perform her job with a reasonable accommodation. Next, Kendall argues that because an unnamed agent from Zoltek stated it would be "bad for morale" if Kendall was allowed to sit during her shift, it is direct evidence of discriminatory motive. Finally, Kendall argues that her "belief" that another a male employee, Tyrone Brooks, was allowed by Zoltek to sit as an accommodation, and since Kendall herself was allowed to sit for several months, it belies any claim that the accommodations she requested were unreasonable.

Setting aside that these arguments are solely supported by hearsay evidence and should not be considered (addressed *supra*), these arguments also ignore the ultimate question at issue: <u>could Kendall perform the essential functions of her position during the relevant time period with or without reasonable accommodations</u>? The answer is no. First, Kendall fails to acknowledge that the nature of her original work restriction, *i.e.*, sitting "secondarily" had changed as of October 2021. Rather, Kendall's medical providers had added a number of additional work restrictions over and above the restriction to sit "secondarily." The argument that the alleged admission that her prior performance was not the issue in October 2021 meeting does not establish, as Kendall wants this Court to believe, that Zoltek allegedly admitted that her ability to perform

19

Appellate Case: 25-1411     Page: 25     Date Filed: 10/03/2025 Entry ID: 5564286

her essential duties was still not an issue given the significantly more constraining work restrictions that were put in place.

The undisputed evidence shows, and the District Court correctly found, that Kendall was not a qualified individual with a disability because she could not perform the essential functions of her position due to the indefinite and increasingly limiting medical restrictions put in place by her healthcare provider. Not only was this conclusion based on material and genuine facts, as of October 2021 when Zoltek allowed Kendall to utilize an FMLA leave, the nature of the October 2021 work restrictions was reaffirmed by Kendall's doctors in the FMLA medical certification form as well as the Short Term Disability benefit medical certification form. Moreover, the accommodations Kendall sought were unreasonable.

**A.** **Kendall is not a "qualified" individual under the ADA because she could not perform her job duties with or without <u>reasonable accommodation</u>**.

To establish a prima facie case of discrimination based on disability, an employee must show that she (1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability. *Moses v. Dassault Falcon Jet - Wilmington Corp*, 894 F.3d 911, 923. "The term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A). Courts apply a two-part test for determining whether an

Appellate Case: 25-1411    Page: 26    Date Filed: 10/03/2025 Entry ID: 5564286

individual is qualified within the meaning of the ADA: first, courts ask whether the individual possesses the requisite skills, education, certification or experience necessary for the job; and second, courts ask whether the individual can, despite impairments, perform the essential functions of the job either with or without reasonable accommodation. *Id*.

### 1. *Kendall Could Not Perform the Essential Functions of Her Job*.

As an initial matter, the summary judgment record evidence indisputably shows that Kendall could not perform the essential functions of her position. Her deposition admissions alone establish this conclusion; the remaining record evidence, such as the written job descriptions of the position and Kendall's medical paperwork only further prove this point.

Essential functions are the fundamental job duties of the employment position. *Moritz v. Frontier Airlines, Inc*., 147 F.3d 784, 787 (8th Cir. 1998); 29 C.F.R. § 1630.2(n)(1) (2018). Whether a job function is essential is determined on a case-by-case basis. "[T]he essential function requirement focuses on the desired result rather than the means of accomplishing it." *Skerski v. Time Warner Cable Co*., 257 F.3d 273, 280 (3rd Cir. 2001) (citation omitted). In determining whether a job function is essential, the Court considers evidence including what functions the employer thinks are essential, written job descriptions, how much time an employee spends on the job performing the function, the consequences of not having the employee perform the

21

Appellate Case: 25-1411     Page: 27     Date Filed: 10/03/2025 Entry ID: 5564286

function, and whether other current employees in similar jobs perform the function. *Scruggs v. Pulaski Cty., Ark.*, 817 F.3d 1087, 1092 (8th Cir. 2016).

As a Production Operator, Kendall's essential duties and responsibilities included setting up and operating equipment to process carbon fiber for composite products; mixing resin and polymer; feeding batch carbon fiber into a machine; inspecting goods during production and finished goods before shipment; restocking material; packaging, labeling, documentation of products; and keeping the equipment area safe, clean, and organized. (Jt. App., Vol. I, 045-046 R. Doc. 48, at 2-3; Jt. App., Vol. I, 058-059 R. Doc. 48-1.) Part of these duties also included having to clean out carbon fiber and removing other foreign objects from the carbon fiber machinery during the carbon fiber bath process; which included reaching to cut knots out of the carbon fiber; reaching above shoulders and bending and squatting below knee level down to handle rolls of peel ply; and changing peel plies weighing up to twenty pounds. (Jt. App., Vol. I, 046 R. Doc. 48, at 3; Jt. App., Vol. I, 067-071 R. Doc. 48-2, at 23-27.)

The Production Operator shift is twelve hours, a fact Kendall repeatedly acknowledged and admitted. Therefore, in order to perform these tasks, the physical requirements of the job position require each Production Operator to be able to stand for up to twelve hours while working. (Jt. App., Vol. I, 046 R. Doc. 48, at 3; Jt. App., Vol. I, 071, 85 R. Doc. 48-2, at 27, 52.) In addition to having to stand throughout the

Appellate Case: 25-1411    Page: 28    Date Filed: 10/03/2025 Entry ID: 5564286

shift operations, Production Operators at Zoltek are also required to be able to lift 25+ pounds overhead and be able to lift, turn, bend, reach, pull, and walk. (Jt. App., Vol. I, 046 R. Doc. 48, at 3; Jt. App., Vol. I, 058-059 R. Doc. 48-1; Jt. App., Vol. I, 066-067, 075, 083-086 R. Doc. 48-2, at 22-23, 32, 50-53.)

Over the course of approximately five months in 2021, however, Kendall received medical restrictions which increasingly prohibited her from performing these functions. After allegedly sustaining a workplace injury in the spring of 2021, Kendall's medical providers began instating increasingly limiting work restrictions: beginning June 23, 2021, Kendall only needed to sit "secondarily," until October 15, 2021, when the sitting restriction was increased to the entire shift together with the addition of other work restrictions; wholly preventing her from performing the essential functions of her position. (Jt. App., Vol. I, 047-048 R. Doc. 48, at 4-5; Jt. App., Vol. I, 096 R. Doc. 48-7; Jt. App., Vol. I, 193 R. Doc. 48-9; Jt. App., Vol. I, 096, 101-102 R. Doc. 48-2, at 87, 93-94.) More importantly, these restrictions became permanent. *See* October 14, 2021 letter from Dr. Brown ("This is a permanent request starting today, October 14, 2021 thru October 14, 2022, renewable letter to be issued yearly.") (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 196 R. Doc. 48-11, at 2; Jt. App., Vol. I, 082, 121, 123, 148 R. Doc. 48-2, at 48, 117, 119, 148.)

Starting with June 23, 2021, Kendall presented a doctor's note from her physician requesting "sitting time secondarily during her work shifts due to sciatic

23

flare ups." (Jt. App., Vol. I, 047 R. Doc. 48, at 4; Jt. App., Vol. I, 096 R. Doc. 48-7; Jt. App., Vol. I, 096 R. Doc. 48-2, at 87.) While Kendall was temporarily accommodated by Zoltek for several months, as the need to sit originally was "secondary" and not "primary," her sciatica condition did not improve. (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 098, 099-100 R. Doc. 48-2, at 91-92.) As a result, Zoltek requested Kendall to provide additional information on her restrictions (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 192 R. Doc. 48-8; Jt. App., Vol. I, 100 R. Doc. 48-2, at 92.)

On September 17, 2021, Kendall presented an updated medical note from her nurse practitioner, which now reiterated that Kendall must sit throughout her shift as well as included additional restrictions as follows: "above patient cannot crawl up under something and get back up after to return to sitting down position as they would like her to. (pt. can sit down to work just not crawl)." (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 193 R. Doc. 48-9; Jt. App., Vol. I, 101-102 R. Doc. 48-2, at 93-94.) As a result of these additional work restrictions, Zoltek placed Kendall on a medical leave of absence on October 5, 2021, so Kendall could provide further information on the duration of the imposed work restrictions and the prognosis for any improved recovery. (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 110 R. Doc. 48-2, at 106.)

Appellate Case: 25-1411    Page: 30    Date Filed: 10/03/2025 Entry ID: 5564286

Shortly thereafter, however, on October 15, 2021, Kendall presented another note from her personal doctor noting the following: "Angela needs to be able to sit down immediately after standing to change paper. She cannot crawl around on the floor. This is a permanent request starting today, October 14, 2021, thru October 14, 2022[sic], renewable letter to be issued yearly." (Jt. App., Vol. I, 050 R. Doc. 48, at 7; Jt. App., Vol. I, 196 R. Doc. 48-11, at 2; Jt. App., Vol. I, 082, 121, 123, 148 R. Doc. 48-2, at 48, 117, 119, 148.)

Kendall did not return to work thereafter as she never improved sufficient to perform her job duties. (Jt. App., Vol. I, 053 R. Doc. 48, at 10; Jt. App., Vol. I, 214-215 R. Doc. 48-15.)

Further suggesting Kendall could not perform the essential functions of the Product Operator position are the various reports prepared by her own doctors certifying her eligibility for an FMLA medical leave as well as her eligibility for STD benefits, while on medical leave from Zoltek. For example, Kendall's FMLA and STD paperwork, prepared in November of 2021, clearly established that Kendall could not perform a number of her essential duties such as bending, stooping, kneeling, getting under machines, reaching under the table, or standing for long periods of time. (Jt. App., Vol. I, 051-52 R. Doc. 48, at 8-9; Jt. App., Vol. I, 200 R. Doc. 48-12, at 4; Jt. App., Vol. I, 212-213 R. Doc. 48-14, at 6-7.) The medical information provided by Kendall's medical professional in support of her application for STD benefits certified

25

that Kendall could not lift or carry greater than 11 pounds, and only lift occasionally between 6 and 10 pounds, nor could Kendall sit more than 20 to 30 minutes and spend no more than ten minutes on her feet. (Jt. App., Vol. I, 052 R. Doc. 48, at 9; Jt. App., Vol. I, 212-213 R. Doc. 48-14, at 6-7; Jt. App., Vol. I, 140-142 R. Doc. 48-2, at 139-141.) Kendall herself admitted that due to her medical restrictions in place at that time, she was unable to perform any of the essential duties of a Production Operator, such as getting down on her knees, crawling underneath the machines, or standing for prolonged periods of time. (Jt. App., Vol. I, 052 R. Doc. 48, at 9; Jt. App., Vol. I, 213 R. Doc. 48-14, at 7; Jt. App., Vol. I, 144 R. Doc. 48-2, at 143.)

Further evidencing the permanency of Kendall's work restrictions is the Independent Medical Examination ("IME") prepared by Dr. David Volarich, a year later, in November 2022. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 225-233 R. Doc. 48-21; Jt. App., Vol. I, 061-062 R. Doc. 48-2, at 17-18.) Dr. Volarich was retained by Kendall in support of her claim for workers' compensation benefits to analyze her alleged workplace injury sustained in March 2021. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 225-233 R. Doc. 48-21; Jt. App., Vol. I, 061-062 R. Doc. 48-2, at 17-18.) The IME made various medical conclusions on Kendall's ability or inability to perform certain tasks as of November 22, 2022, based on statements made by Kendall regarding her job duties at Zoltek during the examination. (Jt. App.,

Appellate Case: 25-1411     Page: 32     Date Filed: 10/03/2025 Entry ID: 5564286

Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 061-067, 070-072, 075 R. Doc. 48-2, at 17-23, 26-28, 32-33, 37.)

For example, Dr. Volarich concluded that Kendall should avoid all bending, twisting, lifting, pushing, pulling, carrying, and climbing. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 232 R. Doc. 48-21, at 7; Jt. App., Vol. I, 061-067, 070-072, 075-79 R. Doc. 48-2, at 17-23, 26-28, 32-33, 37-39.) Dr. Volarich further concluded that Kendall should not lift greater than 10-12 pounds; and when Kendall did lift 10-12 pounds, she should do so only on an occasional daily basis, and that Kendall should not remain in a fixed position for more than 20-30 minutes, either sitting or standing. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 232 R. Doc. 48-21at 7; Jt. App., Vol. I, 061-067, 070-072, 075-79 R. Doc. 48-2, at 17-23, 26-28, 32-33, 37-39.)

Similarly, in October 2023, Kendall's application for Social Security Disability Income benefits was approved, and the Social Security Administration deemed her eligible for such SSDI benefits retroactive to January 2023, wherein she confirmed she would be unable to work. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 234-235 R. Doc. 48-22; Jt. App., Vol. I, 161-167 R. Doc. 48-2, at 166-172.)

It is disingenuous, at best, for Kendall to seek and obtain both workers compensation benefits along with SSDI benefits based on the same work restrictions that Zoltek concluded would preclude Kendall from being able to perform her essential duties. Further belying any claim that Kendall's medical condition improved

27

is the fact that Kendall tried to work in 2022 for a cleaning company but quit her employment as the functions of the position allegedly exacerbated the same back issues Kendall experienced working for Zoltek. (Jt. App., Vol. I, 054 R. Doc. 48, at 11; Jt. App., Vol. I, 151 R. Doc. 48-2, at 153.)

Simply put, allowing Kendall to sit throughout her 12-hour shift would not have resolved her inability to perform the other essential functions of the position. But Kendall believes that this is "contradicted by [Zoltek's] own past practices." Specifically, Kendall believes the functions she could not perform were not essential since "other employees" including Mr. Brooks were allegedly allowed to sit during their shift, and because Kendall herself was allowed to sit for several months, albeit "secondarily," while performing the other duties of her position. In support of this argument, Kendall relies upon hearsay evidence or otherwise inadmissible evidence.

As noted above, this evidence should not be considered as it is inadmissible. Regardless, the employee that Kendall speculates was allowed by Zoltek to sit during his shift, Tyrone Brooks, disputed this ever occurred. (Jt. App., Vol. I, 056 R. Doc. 48, at 13; Jt. App., Vol. I, 236-235 R. Doc. 48-23.) Stated otherwise, there is no genuine evidence that Zoltek authorized Mr. Brooks to sit during his 12-hour shift. Moreover, Kendall acknowledged that Zoltek employees were reminded in 2021 there was a "no sitting" rule during pre-shift meetings. (Jt. App., Vol. I, 079 R. Doc. 48-2, at 39; Jt. App., Vol. II, 397 R. Doc. 69, at 3.)

Appellate Case: 25-1411    Page: 34    Date Filed: 10/03/2025 Entry ID: 5564286

But most importantly, however, sitting was not the only work restriction in place. By mid-October, Kendall could not lift, bend, stoop, kneel, crawl, or even lift more than ten pounds. (Jt. App., Vol. I, 051 R. Doc. 48, at 8; Jt. App., Vol. I, 197-200 R. Doc. 48-12; Jt. App., Vol. I, 201-206 R. Doc. 48-13; Jt. App., Vol. I, 207-213 R. Doc. 48-14; Jt. App., Vol. I, 086-087, 130-137 R. Doc. 48-2, at 53-54, 128-135.) There is no dispute that the essential functions of the Production Operator position required *all* of these physical demands; not just standing. (Jt. App., Vol. I, 045-046 R. Doc. 48, at 2-3; Jt. App., Vol. I, 058-059 R. Doc. 48-1; Jt. App., Vol. I, 066-071, 075, 083-086 R. Doc. 48-2, at 22-27, 32, 50-53.) The fact that Zoltek originally permitted Kendall to sit "secondarily" does not establish that it was obligated to provide this temporary accommodation as a permanent accommodation. An employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous." *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007). *See also Faulkner v. Douglas County, Nebraska*, 906 F.3d 728, 733 (8th Cir. 2018) (prior temporary light duty accommodations do not preclude termination arising from failure to perform essential functions).

Whether Zoltek believed Kendall adequately performed her job duties *prior* to her doctor adding more restrictive work restrictions is irrelevant; of course it did.

29

Appellate Case: 25-1411    Page: 35    Date Filed: 10/03/2025 Entry ID: 5564286

Indeed, the record shows Zoltek made every effort to retain Kendall as an employee: first, by allowing her to sit "secondarily" for several months in the hope she would improve; then, by allowing her to take a leave of absence to allow for further time for improvement. (Jt. App., Vol. I, 047-048, 051 R. Doc. 48, at 4-5, 8; Jt. App., Vol. I, 098-100, 116-117, 128-130 R. Doc. 48-2, at 90-92, 112-113, 124, 127-128.) Even when Zoltek had no choice but to terminate Kendall's employment, Zoltek encouraged her to reapply for her position if her condition sufficiently improved. (Jt. App., Vol. I, 053 R. Doc. 48, at 10; Jt. App., Vol. I, 214-215 R. Doc. 48-15.) Unfortunately, Kendall's condition never improved sufficient for her to return.

### 2. *The Accommodations Requested by Kendall Were Unreasonable.*

As Kendall could not perform the essential functions of her job, in order to be a qualified person with a disability under the ADA, she must show that she could have performed them with a reasonable accommodation. To do so, she must show, "that the requested accommodation is 'reasonable on its face, i.e., ordinarily or in the run of cases'." *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002)).

Kendall cannot show the accommodation she requested was reasonable. To perform the duties of the Production Operator position requires employees to be able to lift 25 pounds overhead; stand for extended periods of time (up to 12 hours); and lift, turn, bend, reach, pull, and walk. (Jt. App., Vol. I, 046 R. Doc. 48, at 3; Jt. App.,

30

Vol. I, 058-059 R. Doc. 48-1; Jt. App., Vol. I, 066-067, 075, 083-086 R. Doc. 48-2, at 22-23, 32, 50-53.) Although Kendall's work restrictions initially started only with "sitting secondarily," over the course of several months, they morphed into far more: including restrictions on bending, lifting, stooping, kneeling, crawling, and even a ten-pound lifting restriction. (Jt. App., Vol. I, 191 R. Doc. 48-7; Jt. App., Vol. I, 193 R. Doc. 48-9; Jt. App., Vol. I, 195-196 R. Doc. 48-11; Jt. App., Vol. I, 200 R. Doc. 48-12; Jt. App., Vol. I, 213 R. Doc. 48-14.) Kendall's focus on whether she should have been allowed to sit only scratches the surface of the restrictions put into place by her providers. To be clear, Kendall could not perform the job responsibilities of a Production Operator considering the total restrictions put in place. Kendall even admitted that the limitations imposed by her healthcare providers precluded her ability to perform the essential duties of the job. (Jt. App., Vol. I, 052 R. Doc. 48, at 9; Jt. App., Vol. I, 213 R. Doc. 48-14, at 7; Jt. App., Vol. I, 144 R. Doc. 48-2, at 143.) When restrictions are squarely at odds with her job responsibilities, the employee has failed to establish that he or she could have performed her duties with reasonable accommodation. *Owens v. N. Tier Retail LLC*, 2021 U.S. Dist. LEXIS 55807, at \*19 (D. Minn. Mar. 24, 2021).

Kendall's demand to remain employed in October 2021 and be returned to work thereafter would have required Zoltek to permanently eliminate the essential functions of her position or require others to assist her in completing her duties, which is

Appellate Case: 25-1411    Page: 37    Date Filed: 10/03/2025 Entry ID: 5564286

unreasonable. Contrary to Kendall's argument, a statement by an unknown declarant that allowing Kendall to sit, while other employees were forced to perform the functions of her position, would be "bad for morale" does not indicate a discriminatory animus toward Kendall. Even if this statement *is* considered, it only echoes the sentiment that it would be unreasonable to require other employees to perform the essential functions of Kendall's position – which is not required by the ADA. *See Fjellestad v. Pizza Hut of America, Inc*., 188 F.3d 944, 950 (8th Cir. 1999) ("An employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee"); *see also Dropinski v. Douglas Cnty*., 298 F.3d 704, 709-10 (8th Cir. 2002) (affirming granting of summary judgment wherein the court found any accommodation offered to the plaintiff would have resulted in reassignment of existing workers to assist the plaintiff in his essential duties); *Moritz v. Frontier Airlines*, 147 F.3d 784, 788 ("It is well settled that an employer is under no obligation to reallocate the essential functions of a position that a qualified individual must perform"); *Mack v. Haarman & Reimer Corp*., 1998 U.S. Dist. LEXIS 9316, at *58-59 (D. Minn. Mar. 26, 1998) (Where the plaintiff could not return to his former position as a maintenance mechanic without transferring many of his essential job functions to another existing employee, or hiring a permanent new employee to render assistance to the plaintiff, such "accommodations" would impose an undue hardship on the business and operations the employer).

Kendall argues that because Zoltek was able to accommodate her by allowing her to sit for several months in the summer of 2021, it should have continued to provide that accommodation permanently. But simply because Zoltek was able to accommodate Kendall for several months with *one* of her restrictions does not equate to whether the accommodation was reasonable on a permanent basis. Nor does it negate whether the physical demands of her job were non-essential.

The law is clear: the ADA does not require an employer to permanently remove essential functions of an employee's position. If an employer 'bends over backwards' to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation. *Faidley v. United Parcel Serv. of Am., Inc.*, 889 F.3d 933, 943 (8th Cir. 2018). Here, even by allowing Kendall to sit on a secondary basis from June 2021 through September 2021, Zoltek never conceded this temporary accommodation would be reasonable on a long-term basis or that the physical demands of her position were non-essential. Moreover, sitting was not the only restriction in place. While the restrictions may have started with sitting, Kendall was eventually restricted from bending, lifting, stooping, kneeling, and crawling, as well as restricted from lifting more than ten pounds. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 232 R. Doc. 48-21at 7; Jt. App., Vol. I, 061-067, 070-072, 075-79 R. Doc. 48-2, at 17-23, 26-28, 32-33, 37-39.)

Appellate Case: 25-1411     Page: 39     Date Filed: 10/03/2025 Entry ID: 5564286

Further, Kendall argues that meeting notes produced in discovery suggest Zoltek would have been willing to accommodate Kendall had her injury occurred at work. But Kendall's counsel did not conduct discovery on the note, such as determining the actual author of the statement or to obtain more context on the note. For example, the top of the document referenced by Kendall states, "First Note from June," suggesting the comment could relate to the initial doctor's note provided by Kendall on June 23, 2021. (Jt. App., Vol. II, 312 R. Doc. 58-4.) And, at that time, Zoltek did provide a temporary accommodation to Kendall and allowed her to sit "secondarily" for several months. (Jt. App., Vol. I, 048 R. Doc. 48, at 5; Jt. App., Vol. I, 099-100 R. Doc. 48-2, at 91-92.)

Even assuming, *arguendo*, that Kendall had established this statement could be attributed to Zoltek, differentiating between occupational work related medical conditions as it relates to light duty assignments is not contrary to the ADA. The EEOC has long recognized that "the ADA does not require employers to lower production standards to accommodate individuals with disabilities." The EEOC then observes that "an employer is clearly permitted to lower production standards for an occupationally injured employee as a way of returning him/her to work more quickly." *See* Enforcement Guidance: Workers' Compensation and the ADA (Sept. 3. 1996).[3]

---

[3] A copy of the applicable EEOC guidance can be reviewed from the agency website, www.eeoc.gov/laws/guidance/enforcement-guidance-workers-compensation-and-ada. The quoted discussion is in answer to Q. 26.

Appellate Case: 25-1411    Page: 40    Date Filed: 10/03/2025 Entry ID: 5564286

Finally, the EEOC went on its Enforcement Guidance to recognize that an employer that recognizes "a special obligation" for an employee who "has been injured while performing work for an employer" does not act in contravention to the ADA. Such recognition by an employer "does not treat an individual with a disability less favorably than an individual without a disability." *Id.*[4]

Regardless of context or Kendall's interpretation of this hearsay statement, however, the note is irrelevant. It does not change the fact that Kendall continued to receive increasing restrictions from her medical providers as time went on, which became indefinite in duration. (Jt. App., Vol. I, 055 R. Doc. 48, at 12; Jt. App., Vol. I, 232 R. Doc. 48-21at 7; Jt. App., Vol. I, 061-067, 070-072, 075-79 R. Doc. 48-2, at 17-23, 26-28, 32-33, 37-39.) There was no feasible way Zoltek could have provided Kendall with an accommodation when she could not perform any of the essential functions of her job for the foreseeable future; nor is such a task required by law. *See Moses*, 894 F.3d, at 924 (finding employer could legitimately terminate the plaintiff if he was unable to perform the essential functions of his job, relying on IME to support the employer's determination that the plaintiff could not do his job with or without accommodation.) Accordingly, this Court should affirm the District Court's ruling on summary judgment dismissing Kendall's ADA failure to accommodate claim.

---

[4] The quoted discussion from the September 3, 1996 EEOC Enforcement Guidance is in answer to Q. 27.

35

Appellate Case: 25-1411     Page: 41     Date Filed: 10/03/2025 Entry ID: 5564286

**III. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT ON KENDALL'S TITLE VII CLAIM.**

Kendall also challenges the district court's entry of judgment in favor of Zoltek and dismissal of her Title VII sex discrimination claim that a "similarly situated" male employee, Tyrone Brooks, was permitted the same accommodation as her (again ignoring all of Kendall's work restrictions above the need to sit). As noted by the District Court in its order on summary judgment, this argument is irrelevant because Mr. Brooks was not similarly situated to Kendall. Further, even if it were relevant, there was no genuine evidence in the summary judgment record that Mr. Brooks was provided any preferential treatment compared to Kendall, or that the denial of the requested accommodation by Kendall could constitute an adverse action.

Because Kendall is claiming disparate treatment compared to a male peer, her claim must be analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In a disparate treatment context, a plaintiff must show that "(1) she was a member of a protected group; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from similarly situated males." *Tenge v. Phillips Mod. Ag Co.*, 446 F.3d 903, 910 (8th Cir. 2006). If a plaintiff can make out this prima facie case, the employer must then articulate a legitimate nondiscriminatory reason for its actions. *Id*. From there, the employee must demonstrate that the reason was simply a pretext for discrimination. *Id*.

Appellate Case: 25-1411     Page: 42     Date Filed: 10/03/2025 Entry ID: 5564286

As an initial matter, then, Kendall must first demonstrate that she had the physical ability to perform the job to the employer's expectations. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046-47 (8th Cir. 2005). But as noted *supra*, Kendall could not perform the essential functions of her job, nor were the accommodations requested by Kendall reasonable. There is ample record evidence showing that Kendall could not physically perform the job of Production Operator. Zoltek likewise had a legitimate explanation for denying Kendall the accommodations she requested, as it is unreasonable to demand an employer eliminate essential functions of a position or force other employees to assist her with performing those functions.

But even if Kendall *could* perform her the essential functions of her job, and even if her requests *were* reasonable, there is still no record evidence that a similarly situated male employee received more favorable treatment. *See Faulkner,* 906 F.3d, at 732 (affirming summary judgment granted on plaintiff's discrimination claim under Title VII because plaintiff could not show similarly situated male employees given favorable treatment).

Kendall identifies one employee, Mr. Brooks, who she believes was afforded the opportunity to sit during his shift without a doctor's statement (App. Br., at 2, 9-10, 12, 17.) Putting aside whether Mr. Brooks was even considered similarly situated to Kendall during this time, of which there is no evidence, there is similarly no evidence that Mr. Brooks received any preferential treatment from Zoltek.

37

Kendall did not work the same shift as Mr. Brooks, nor did she ever personally observe or witness him seated during his shift. (Jt. App., Vol. I, 056 R. Doc. 48, at 13; Jt. App., Vol. I, 236-235 R. Doc. 48-23; Jt. App., Vol. I, 117-121 R. Doc. 48-2, at 113-117.) Mr. Brooks was consistently cleared to return to work full duty, and did so, each time he returned from a medical leave of absence. (Jt. App., Vol. I, 236-235 R. Doc. 48-23.) Mr. Brooks explained that following a knee surgery in the past, he occasionally sat on a bucket for no more than one or two minutes at a time at most. (Jt. App., Vol. I, 236-235 R. Doc. 48-23.) This was not an accommodation sanctioned by Zoltek; in fact, Mr. Brooks admitted that Zoltek did *not* allow him to sit. (Jt. App., Vol. I, 236-235 R. Doc. 48-23.) Mr. Brooks further acknowledged that he would not be able to perform the job duties of the Production Operator position sitting down. (Jt. App., Vol. I, 236-235 R. Doc. 48-23.)

Kendall's argument, which relies entirely on relies solely on speculation and hearsay, conflates a brief moment of reprieve unilaterally taken by Mr. Brooks with an accommodation or rest period authorized by Zoltek. It also relies entirely on hearsay and other evidence that should not be considered; as noted above, inadmissible evidence should not be considered for purposes of summary judgment. Notably, this argument also assumes Kendall *only* needed to sit down, but that was not the only accommodation she needed.

Appellate Case: 25-1411   Page: 44   Date Filed: 10/03/2025 Entry ID: 5564286

To be clear, Kendall has no firsthand knowledge or evidence to support remanding her Title VII claim. Instead, she relies on hearsay and speculation, asserting Brooks received an accommodation because of his gender. In reality, no such accommodation was provided. Accordingly, this Court should affirm the District Court's ruling on summary judgment for Kendall's Title VII claim.

## CONCLUSION

Kendall failed to establish a genuine issue of material fact on any of her claims, and Zoltek was rightfully entitled to summary judgment. Zoltek respectfully requests this Court affirm the District Court's Order granting Zoltek's motion for summary judgment and dismissing Kendall's Complaint in its entirety and with prejudice.

Respectfully Submitted:

**DATE: October 2, 2025**                    **JACKSON LEWIS, P.C.**

*/s/ Thomas E. Berry, Jr.*
Thomas E. Berry, Jr., #38433MO
MaryAnne Quill, #71133MO
1 N. Brentwood Blvd., Suite 1150
St. Louis, Missouri 63105
Telephone: (314) 827-3939
Facsimile: (314) 827-3940
tom.berry@jacksonlewis.com
maryanne.quill@jacksonlewis.com

*Attorneys for Appellee*
*Zoltek Corporation*

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies the following:

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,757 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Pursuant to Rule 28A(h) of the Eighth Circuit Rules, the brief has been scanned for viruses and is virus-free.

Date:  October 2, 2025

**JACKSON LEWIS, P.C.**

*/s/ Thomas E. Berry, Jr.*
Thomas E. Berry, Jr., #38433MO
MaryAnne Quill, #71133MO
1 N. Brentwood Blvd., Suite 1150
St. Louis, Missouri 63105
Telephone: (314) 827-3939
Facsimile: (314) 827-3940
tom.berry@jacksonlewis.com
maryanne.quill@jacksonlewis.com

*Attorneys for Appellee*
*Zoltek Corporation*

Appellate Case: 25-1411    Page: 46    Date Filed: 10/03/2025 Entry ID: 5564286

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 2, 2025, I electronically filed Appellees' Brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit utilizing the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that electronic service will be accomplished via the CM/ECF system.

Date: October 2, 2025 **JACKSON LEWIS, P.C.**

*/s/ Thomas E. Berry, Jr.*
Thomas E. Berry, Jr., #38433MO
MaryAnne Quill, #71133MO
1 N. Brentwood Blvd., Suite 1150
St. Louis, Missouri 63105
Telephone: (314) 827-3939
Facsimile: (314) 827-3940
tom.berry@jacksonlewis.com
maryanne.quill@jacksonlewis.com

*Attorneys for Appellee*
*Zoltek Corporation*

Appellate Case: 25-1411     Page: 47     Date Filed: 10/03/2025 Entry ID: 5564286